Arthur **TAYLOR**, Plaintiff,

v.

**GENERAL MOTORS CORPORATION, a foreign corporation and Metropolitan Life Insurance Company, a foreign corporation, jointly and severally, Defendants.**

No. 81–40304.

United States District Court,
E.D. Michigan, S.D.

May 17, 1984.

James A. Brescoll, Mount Clemens, Mich., for plaintiff.

David M. Davis, Detroit, Mich., Gilbert Y. Rubenstein, Flint, Mich., for defendants.

James A. Brescoll, Mount Clemens, Mich., for plaintiff.

David M. Davis, Detroit, Mich., Gilbert Y. Rubenstein, Flint, Mich., for defendants.

## MEMORANDUM OPINION AND ORDER

NEWBLATT, District Judge.

This matter comes before the Court on defendant Metropolitan Life Insurance Company's (Metropolitan) renewed motion for a separate trial, Metropolitan's renewed motion for partial summary judgment on the issue of disability benefits for a back condition raised in Count II, Metropolitan's renewed motion for partial summary judgment on the issue of disability benefits for a psychological condition raised in Count II, and defendant General Motors Corporation's (GM) motion for summary judgment on Counts I and III. Because of the disposition of Metropolitan's two motions for partial summary judgment, the Court need not address Metropolitan's motion for a separate trial.

Plaintiff filed this cause of action in Wayne County Circuit Court on March 13, 1981. On March 24, 1981, GM, with the concurrence of Metropolitan, properly removed the case to this court, citing the Employee Retirement Insurance Security Act, 29 U.S.C. § 1132(a), as the basis of jurisdiction. This Court permitted plaintiff to amend his complaint on October 10, 1983, and on October 24, 1983, plaintiff filed his first amended complaint, alleging in Count I that GM failed to promote plaintiff and finally terminated him on November 5, 1980 in retaliation for his filing workers' compensation claims against GM in 1964, and for exercising his rights under the "Open Door" policy, asserting in Count II that Metropolitan had breached its insurance contract with plaintiff by refusing to award him disability benefits for a back injury and psychological problems, and claiming in Count III that plaintiff had been discharged in breach of his employment contract.

## FACTS

Plaintiff commenced salaried employment with GM as a 5th level Engineering Analyst in the Fisher Body Division on June 25, 1959. He was promoted to 6th level Quality Control Analyst on September 1, 1959, and on March 1, 1960, plaintiff was promoted to 7th level Senior Engineer and transferred to the Chevrolet Central Office.

On March 31, 1960, plaintiff entered into an employment contract with GM, which provided in pertinent part:

\* \* \* \* \* \*

2. The Employee acknowledges that his employment under this agreement is from month to month only on a calendar month basis.

6. The Employer and the Employe acknowledge that there are no other arrangements, agreements, or understandings, verbal or in writing, regarding same and that any modification or amendment hereof, other than a cancellation and replacement hereof by another written form of agreement, must be endorsed hereon in writing and initialed by both the Employe and the Employer.

The contract also specified that pay would be determined by a Compensation Statement periodically signed by plaintiff. *See* GM's Ex. A. In April of 1961, plaintiff was given a copy of the employee handbook "Working With General Motors" which

mentioned GM's policy of filling vacancies by promoting from within whenever possible and which also outlined GM's "Open Door" policy. *See* plaintiff's Ex. 2. Plaintiff received a new edition of "Working With General Motors" in September of 1977. *See* GM's Ex. N.

While visiting a GM facility in Framingham, Massachusetts for GM in August of 1961, plaintiff was involved in an automobile accident in which he suffered a back injury. Plaintiff makes unsubstantiated claims that because of his accident, he was treated badly on the job. Following plaintiff's return to work after the accident, he was given an appraisal of D3. *See* plaintiff's Ex. 1. Plaintiff's injury became the subject of a worker's compensation claim which was ultimately resolved in November of 1966 through plaintiff's exercise of the "Open Door" policy. *See* GM's Ex. 1 and 2.

During the period from 1966 through 1974 plaintiff received appraisals of B1 and B2. Plaintiff's Ex. 1. Plaintiff continued employment through May 20, 1980. Between 1966 and 1980, plaintiff exercised his rights under the "Open Door" policy numerous times by writing letters expressing an interest in promotion and transfer to a warmer climate. Plaintiff was neither transferred nor promoted. *See* GM's Ex. 3–11.

Plaintiff submitted a Statement of Claim for Sickness and Accident benefits to Metropolitan on June 2, 1980. The Claim was signed by Andrew T. Yang, Ph.D., who stated that plaintiff was suffering from situational anxiety reaction. Aff. of Richard J. Prunty, Ex. A. In a letter from Dr. Yang to Stephen A. Evanoff, D.O., plaintiff's physician for back problems, Dr. Yang suggested that plaintiff might also be suffering disc problems. On the very day the claim was received, Metropolitan clerk C. Newton notified the Administrator of the Employee Benefit Plan that Dr. Yang held a Ph.D. degree and was not a licensed physician. Ms. Newton then scheduled a psychiatric examination for plaintiff on June 11, 1980 at 1:30 p.m. Aff.

of Prunty, Ex. B. On June 5, 1980, Norb Leonard of Metropolitan told Ms. Newton that benefits could be awarded under the certification of a Ph.D. holder only if a psychiatrist concurred in the Ph.D's findings of disability. Furthermore, benefits could not be awarded for a back problem without proof that plaintiff was being seen and treated by a physician for the back problem. Aff. of Prunty, Ex. C.

Plaintiff was examined by Metropolitan's psychiatrist, Dr. Forrer, who found plaintiff unable to work. However, six weeks later, Dr. Forrer stated that plaintiff could return to work. Aff. of Prunty, Ex. F. Plaintiff then filed a Supplementary Claim Form seeking disability benefits for orthopedic reasons. Aff. of Prunty, Ex. G. Plaintiff was placed on Special Leave of Absence Without Pay pending a determination of his alleged disability. Aff. of Prunty, Ex. H. Finally, on September 25, 1980, Metropolitan's doctor found that plaintiff was not disabled for orthopedic reasons. Aff. of Prunty, Ex. J. On November 5, 1980, a GM plant doctor found plaintiff able to return to work. Aff. of Prunty Ex. L. Plaintiff did not return to work. Thus, his absence was treated as a voluntary quit and plaintiff's employment, and consequently his insurance coverage, was terminated as of November 5, 1980. GM's Ex. 1; Aff. of Prunty.

Now that Metropolitan has provided the Court with a copy of the insurance policy, its two motions for partial summary judgment are quite easily resolved. It is clear from Section 10 of the insurance policy that benefits will be awarded only if a claimant is treating with a legally licensed physician. Metropolitan's Reply Brief, Ex. A. Furthermore, it is equally evident from the affidavit of Richard J. Prunty, a Senior Consultant in Metropolitan's Litigation and Appeals Department, and exhibits attached thereto, that payments for plaintiff's psychological disability were not made on the basis of Dr. Yang's recommendation, but upon the certification of Dr. Forrer, a psychiatrist. Therefore, plaintiff's theory that Metropolitan is estopped from denying him

benefits under the signature of a Ph.D. degree holder because he relied to his detriment on an earlier award based on Dr. Yang's report simply does not fit the facts. Plaintiff has stated no factual basis for his contention that this so-called contract of adhesion should not be enforced. Plaintiff having offered no facts to contradict that which Metropolitan has established, Metropolitan's motion for partial summary judgment on the issue of disability benefits for a psychological condition is GRANTED.

■ Granted also is Metropolitan's motion for partial summary judgment on the issue of disability benefits for a back condition. Section 10 of the insurance contract provides that an impairment will be treated as a disability when it renders an employee "wholly and continuously disabled" from performing "any and every" job duty. Once again, plaintiff has failed to state a factual basis for his assertion that the contractual definition of disability is intolerably restrictive. Four doctors evaluated plaintiff's back problem. Both Metropolitan's doctor and GM's plant physician opined that plaintiff was able to work. Aff. of Prunty, Ex. J. and L. Dr. Stephen A. Evanoff treated plaintiff for his back problem, beginning in 1978. However, Dr. Evanoff, as a treating physician, never considered it necessary to advise plaintiff to quit working, even during the period that plaintiff was seeking disability benefits. In fact, Dr. Evanoff believed that plaintiff was able to work. Dep. of Stephen A. Evanoff, D.O. at 31–38. Only Dr. Max Karl Newman, who examined plaintiff only once in July of 1980, concluded that plaintiff had been disabled since May 20, 1980. In fact, Dr. Newman stated that plaintiff may have been disabled years previous to May 20, 1980, during which time he was employed full-time by GM. Dep. of Max Karl Newman, M.D. at 54. Dr. Newman further declared that plaintiff was disabled from "bending, lifting, twisting, [and] turning." Dep. of Newman at 50. However, plaintiff's November 11, 1983 deposition reveals that the strenuous activity from which Dr. Newman disabled him was not a part of plaintiff's job. Dep. of plaintiff at 8–17 (Nov. 11, 1983). Whether or not plaintiff can bend and twist is irrelevant when the job from which he claims to be disabled has no bending and/or twisting requirements.

The Court will address the issues in GM's motion for summary judgment in the order addressed by GM. GM first argues that plaintiff cannot maintain his Count III claim that his termination of employment on November 5, 1980 was in breach of his contractual employment agreement with GM. Plaintiff bases his claim on *Toussaint v. Blue Cross & Blue Shield of Michigan*, 408 Mich. 579, 292 N.W.2d 880 (1980), in which the Michigan Supreme Court held that an employer's policy statements may give rise to the legitimate expectation of an employee hired for an indefinite period that he will be discharged only for just or good cause. Plaintiff states that the "Open Door" policy described in the pamphlet "Working With General Motors" created the impression that plaintiff's employment would be terminated only for just cause. GM responds that, as provided in paragraph 2 (quoted previously) of the employment agreement, plaintiff's employment was terminable at will, and he could be fired for any cause or no cause. Furthermore, GM argues, the exclusionary language of paragraph 6 of the employment agreement (previously quoted) precludes justifiable reliance on "Working With General Motors." For the reasons stated in *Reid v. Sears, Roebuck and Company*, 588 F.Supp. 558, 563–564 (E.D.Mich.1984), this Court is unpersuaded by GM's arguments that plaintiff does not have a Toussaint claim. Now the Court must turn to a determination as to whether the facts support plaintiff's claim and whether there is any genuine issue of material fact with regard thereto.

Plaintiff asserts that he relied on the representation in the GM pamphlet that job openings would be filled by promotions from within the company, but that he was never promoted beyond a level 7. Dep. of plaintiff at 66–67 (Nov. 11, 1983). Moreover, plaintiff claims that he relied on GM's

policy that an open door existed between salaried employees and the supervisory structure, a policy which, GM stressed, epitomized fairness. In particular, plaintiff cites the following paragraph from "Working With General Motors."

In general terms, the policy is simply an attitude of fair and friendly consideration for each individual's viewpoint. More specifically, it invites you to express yourself freely to your supervisor about your job or about General Motors policies. If you have a problem, a misunderstanding or a request, talk to your supervisor about it. If he is not able to give you a satisfactory answer, he will arrange for your problem to be taken to the proper authority—your general supervisor, the Personnel Department, your General Manager or his designated representative, or, in unusual cases, the General Motors Central Office in Detroit.

See plaintiff's response to GM's Motion for Summary Judgment, Ex. 2. The record reflects that plaintiff freely exercised his rights under the "Open Door" policy, writing letters concerning promotions, transfers, and a workers' compensation claim. GM's Ex. 1–11. The fact that GM did not respond to plaintiff's inquiries with a new job does not raise a question of unfair treatment. Rather, GM cautioned in its pamphlet that "[y]ou should understand, of course, that using the "Open Door" will not always result in the action you desire. But the Open Door should provide you the opportunity to review your concerns not only with your immediate supervisor but, if necessary, with higher levels of management." GM's Ex. N at 10.

Plaintiff believes that GM's assurances that "an attitude of fair and friendly consideration" to "each individual's viewpoint" create an objective basis for his belief that his employment would be terminated only for just cause. There is absolutely no showing on the record that fairness in terms of the "Open Door" policy meant "just cause" termination. Nor is there any evidence that GM's "Open Door" policy was in any way related to GM's termination policy. The bare allegations of plaintiff's complaint will not survive a motion for summary judgment. Fed.R.Civ.P. 56(e).

■ At best, plaintiff has described a subjective expectancy of just cause termination. And the Michigan Court of Appeals has held that a subjective expectancy is not sufficient to establish an implied in fact contract. *Schwartz v. Michigan Sugar Co.*, 106 Mich.App. 471, 308 N.W.2d 459 (1981). At worst, plaintiff has suggested an expectancy in continued employment based on the "Open Door" policy, which policy has nothing to do with employment termination. Even if the policy did create a legitimate expectancy of "just cause" termination, the record establishes that plaintiff was fired after ignoring a letter to return to work after he had been found able to work. The affidavit of Margaret M. Fitzpatrick, Personnel Director, Chevrolet Motor Division, Central Office, states that plaintiff's discharge was in accordance with procedures applicable to GM salaried employees in similar circumstances. Aff. of Fitzpatrick. Therefore, GM's motion for summary judgment on Count III is GRANTED.

■ As for Count I, the retaliatory discharge claim, GM argues that assuming *arguendo* plaintiff has established a prima facie case, GM has articulated a legitimate, non-discriminatory reason for plaintiff's discharge, a reason which plaintiff has been unable to show was mere pretext. *See Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981). Here plaintiff claims that he was fired for filing a worker's compensation claim in 1964 and another in 1980 and for pursuing his rights under the "Open Door" policy throughout the 21 years of his employment. GM responds that plaintiff's employment was terminated because he failed to return to work upon notice from GM that he was found able to work. *See Aff. of Fitzpatrick.* Now "plaintiff must put forth factual allegations to raise a triable issue of fact as to whether [GM's] prof-

fered reason [ ] was a mere pretext." *Clark v. Uniroyal Corp.*, 119 Mich.App. 820, 826, 327 N.W.2d 372 (1982). The only factual allegations plaintiff makes concerning retaliatory discharge are his subjective beliefs that there was a plot brewing in 1978 to terminate him. Plaintiff does not know who was responsible for the plan, how many were involved in carrying it out, or why they implemented the plan. Dep. of plaintiff at 86–87 (Sept. 23, 1983). Unsupported allegations based on subjective beliefs will not withstand a motion for summary judgment. Fed.R.Civ.P. 56(e).

■ Finally, plaintiff's failure-to-promote claim is time-barred by the 3-year statute of limitations, M.C.L.A. § 600.-5805(8). Plaintiff last wrote GM concerning promotion in 1977. GM's Ex. 10. However, plaintiff claims to have made oral inquiries throughout his employment. Dep. of plaintiff at 58–60 (Sept. 23, 1983). He knew as long ago as July of 1971 that he was not being promoted. Dep. of plaintiff at 88–90 (Nov. 11, 1983). But he did not file suit until 1981.

Plaintiff wishes to treat GM's failure to promote as a continuing wrong, and cites various nuisance theory cases in support thereof. While the wrong actually continues in nuisance cases, it is not the failure to promote which continues in employment cases, but the employment itself. And the United States Supreme Court has stated that "[m]ere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination." *Delaware State College v. Ricks*, 449 U.S. 250, 257, 101 S.Ct. 498, 504, 66 L.Ed.2d 431 (1980). Thus, any pre-1978 failure to promote claim plaintiff may have had is time-barred. Furthermore, plaintiff has not even attempted to rebut GM's statement, supported by plaintiff's appraisals, that plaintiff's work during the years 1977–80 was not worthy of promotion. GM's Ex. J, K, L, M. Therefore, there has been raised no genuine issue of material fact on either the retaliatory discharge claim or the failure to promote

claim, and GM's motion for summary judgment on Count I is GRANTED.

For the reasons just stated, Metropolitan's two motions for partial summary judgment are GRANTED; GM's motion for summary judgment is GRANTED; and this case is DISMISSED.

IT IS SO ORDERED.