Arthur TAYLOR, Plaintiff-Appellant,

v.

GENERAL MOTORS CORPORATION and Metropolitan Life Insurance Company, Defendants-Appellees.

No. 84–1503.

United States Court of Appeals, Sixth Circuit.

Argued June 17, 1987.

Decided Aug. 14, 1987.

David M. Davis (argued), Detroit, Mich., Gilbert Y. Rubenstein, Rubenstein, Pruchnicki, Chittle and Smith, Flint, Mich., William J. Toppeta, James M. Lenaghan (argued), Susan M. Greidman, New York City, for defendants-appellees.

Dennis P. Brescoll (argued), Mount Clemens, Mich., for plaintiff-appellant.

Before WELLFORD and MILBURN, Circuit Judges and KINNEARY *, Senior District Judge.

WELLFORD, Circuit Judge.

Arthur Taylor, plaintiff, sued his former employer, General Motors Corporation (General Motors) and the insurance carrier for the General Motors employee benefit plan, Metropolitan Life Insurance Company (Metropolitan) following the termination of Taylor's employment. Plaintiff claimed three causes of action: (1) wrongful failure by General Motors to promote him over a number of years and termination in retalia-tion for his filing of workers compensation claims; (2) wrongful failure of General Motors and Metropolitan to afford him disability benefits under the salaried employees' benefit program (an ERISA plan); and (3) wrongful discharge by General Motors through breach of contract and failure to adhere to its "open door" and discharge "for cause only" policies.

The district court granted defendants summary judgment. *See Taylor v. General Motors Corp.*, 588 F.Supp. 562 (E.D. Mich.1984). We reversed this decision, holding that the controversy should have been remanded to district court, because we held that removal of the case from state court was improper "where the well-pleaded complaint in this instance failed to raise a federal question." *Taylor v. General Motors*, 763 F.2d 216, 220 (6th Cir.1985).

The Supreme Court granted certiorari and held that we had been in error in ordering a remand, because "this suit, though it purports to raise only state law claims, is necessarily federal in character by virtue of the clearly manifested intent of Congress." *Metropolitan Life Ins. Co. v. Taylor*, —— U.S. ——, ——, 107 S.Ct. 1542, 1548, 95 L.Ed.2d 55 (1987). Following receipt of the mandate covering this reversal and remand, we directed supplemental briefing and oral argument. We now AFFIRM the judgment of the district court.

Taylor was a salaried employee with General Motors, beginning employment in 1959, working as a fifth level engineering analyst with the Fisher Body Division. In September of that year he was promoted to a sixth level quality control analyst, and in March 1960 was once again promoted to a seventh level senior engineer. At this time he was transferred to the Chevrolet central office.

In 1960, plaintiff entered into an employee contract which provided in part:

2. The Employe acknowledges that his employment under this agreement is

---

* The Honorable Joseph P. Kinneary, United States District Court for the Southern District of

Ohio, sitting by designation.

from month to month only on a calendar month basis.

\* \* \* \* \* \*

6. The employer and the Employe acknowledge that there are no other arrangements, agreements, or understandings, verbal or in writing, regarding same and that any modification or amendment hereof, other than a cancellation and replacement hereof by another written form of agreement, must be endorsed hereon in writing and initialed by both the Employe and the Employer.

The following month plaintiff was given an employee handbook entitled "Working With General Motors." This handbook outlined General Motor's policy of promoting from within, and also stated General Motor's "open door" policy. In essence, this latter policy is best summarized in the handbook as follows:

In general terms, the policy is simply an attitude of fair and friendly consideration for each individual's viewpoint. More specifically, it invites you to express yourself freely to your supervisor about your job or about General Motors policies. If you have a problem, a misunderstanding or a request, talk to your supervisor about it. If he is not able to give you a satisfactory answer, he will arrange for your problem to be taken to the proper authority—your general supervisor, the Personnel Department, your General Manager or his designated representative, or, in unusual cases, the General Motors Central Office in Detroit.

In 1961, while visiting a General Motors facility in Framingham, Massachusetts, plaintiff was involved in an automobile accident. As a result of this accident, plaintiff was treated for back, neck, and leg pain, and he took a two to three week leave of absence from work. Following this accident plaintiff began receiving Blue Cross/Blue Shield benefits, which were halted when the insurer learned that plaintiff's accident was work-related. There-

after plaintiff sought compensation from General Motors.

Since General Motors denied any responsibility or liability for the accident, plaintiff obtained an attorney to file a worker's compensation claim. The claim was finally resolved only after consultation with supervisors and management, through the "open door" policy, sometime in 1965. As a result of the accident and claim for compensation, plaintiff claims that animosity arose between his supervisors and himself. He claims that this resulted generally in his receiving no promotions and poor performance reports.[1]

Between 1966 and 1980 plaintiff instituted a letter writing campaign whereby he decided to take further advantage of General Motors' open door policy. Through various letters to upper level management, plaintiff complained of his lack of promotion and also sought, among other things, a transfer to a "warmer climate." In August 1978 plaintiff was placed on medical travel restrictions. After a five and one-half month sick leave, plaintiff returned to work and was assigned a less vigorous job. His pay remained the same, though the job itself was one involving less responsibility than plaintiff had previously enjoyed.

In May 1980 plaintiff began consulting a licensed psychologist, Andrew T. Yang, Ph.D., because of emotional problems he was then having. According to plaintiff, he was experiencing a very messy divorce and child custody battle, leading to "sheer depression" and "suicidal tendencies." As a result of his emotional problems, plaintiff took another leave of absence from work, and also notified Metropolitan that he had become totally disabled. Accompanying this notice was a statement from Dr. Yang that plaintiff was suffering from a situational anxiety reaction and should not return to work. In a letter from Dr. Yang to Dr. Stephen A. Evanoff, plaintiff's treating physician, Dr. Yang also suggested that plaintiff might be suffering back problems.

---

1. Not all of Taylor's performance reports were poor during this period, although a number were less than satisfactory.

Upon receipt of plaintiff's notice of disability, Metropolitan commenced paying benefits. At the same time, realizing that Dr. Yang was not a physician, Metropolitan promptly scheduled plaintiff for a psychiatric examination. Dr. Gordon Forrer, a licensed psychiatrist, examined plaintiff and concluded that, as an initial matter, plaintiff was to be considered disabled. He recommended, however, that a follow-up examination be held in six weeks. After conducting this follow-up examination, Dr. Forrer concluded that plaintiff was not disabled and could return to work.

Plaintiff then filed a supplementary claim with Metropolitan seeking disability benefits for orthopedic reasons. Plaintiff at this time was placed on special leave of absence without pay pending investigation of this supplementary claim. In July 1980, plaintiff was directed by Metropolitan to have an orthopedic examination by Dr. N.K. Wilson, who initially found no orthopedic problem indicating disability. Later, upon studying x-rays taken by Dr. Evanoff, Dr. Wilson again concluded that plaintiff suffered no orthopedic disability.

Previously, in August of 1980, General Motors informed plaintiff that he had been found not disabled, and that his file would be further considered by Metropolitan, the disability insurance carrier. Metropolitan had ceased paying benefits in July of 1980. Plaintiff then filed a second workers' compensation claim against General Motors, which terminated disability benefits on July 30, 1980.

In October of 1980, Metropolitan informed both plaintiff and General Motors that it had reviewed Taylor's evidence and concluded that plaintiff was not disabled. It thus also refused to pay any benefits beyond July 30, 1980. Accordingly, on October 31, 1980, plaintiff was requested to report to the Chevrolet Central Office medical department for a medical examination. On November 5, 1980, plaintiff was examined by a General Motors' physician who concluded that plaintiff was able to resume his duties.

Rather than return to work as requested, plaintiff continued to insist that he was disabled. General Motors finally notified plaintiff that his employment had been terminated as of November 5, since he was deemed a "voluntary quit."

## I. METROPOLITAN'S LIABILITY FOR DISABILITY BENEFITS CLAIM

██ The terms of the Metropolitan insurance contract provided disability benefits only when the employee was "wholly and continuously disabled" from performing "any and every" job duty. Also, for benefit eligibility, the employee had to be under the care of a legally licensed physician. With respect to claimed emotional problems, Taylor was never under the care of a licensed physician. Dr. Yang, his psychologist, was not a medical doctor, as required. The only licensed psychiatrist to examine plaintiff found him fit to return to duty after the opportunity for several examinations. Taylor therefore had no claim against Metropolitan for a disabling emotional condition.

Concerning plaintiff's asserted back problems, not a single doctor who examined plaintiff found him wholly and continuously disabled within the meaning of the insurance contract. All the orthopedic specialists agreed that no disabling orthopedic problem existed. Summary judgment for Metropolitan was therefore appropriate.[2]

## II. RETALIATION CLAIMS

Plaintiff claims that General Motors retaliated against him for filing workers' compensation claims. He makes two separate contentions: first, he claims he was discharged as a retaliatory measure for filing workers' compensation claims; second, he claims that he was denied promotions for making such claims.

A claim exists under Michigan law for discharge in retaliation for filing a workers' compensation claim. *Sventko v. Kro-*

---

**2.** Metropolitan did not act arbitrarily or capriciously in denying Taylor's claim. We find no basis to apply estoppel because, in an abundance of caution, Metropolitan initially paid Taylor temporary benefits.

*ger Co.*, 69 Mich.App. 644, 245 N.W.2d 151 (1976); *Hrab v. Hayes-Albion Corp.*, 103 Mich.App. 90, 302 N.W.2d 606 (1981). In the present case, the district court found that General Motors had articulated a legitimate reason for Taylor's discharge, a refusal to report to work after a full and fair determination that he was not disabled. The district court, applying the analysis set out in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), imposed on plaintiff a burden of demonstrating a "triable issue of fact as to whether [General Motors'] proffered reason was a mere pretext." We find no error in the conclusion that plaintiff made no such showing.

 Plaintiff argues that the district court erred in applying a *Burdine*-type test to his retaliatory discharge claim. No Michigan court to date has applied the *Burdine* shifting burden analysis in a retaliatory discharge case. In *Bogue v. Teledyne Continental Motors*, 136 Mich.App. 374, 356 N.W.2d 25 (1984), however, the court sanctioned the use of jury instructions based on *Burdine* in an employment discrimination case. Likewise, in *Clark v. Uniroyal Corp.*, 119 Mich.App. 820, 327 N.W.2d 372 (1982), the *Burdine* analysis was applied in a discrimination case brought pursuant to the Michigan Fair Employment Practices Act. In addition to our conclusion that the district court's analysis was proper that plaintiff had failed to make out a retaliatory discharge claim, we find that the Michigan statute of limitations is a bar to a claim arising out of the filing of the first workers' compensation claim filed some fifteen years prior to the termination in controversy. Plaintiff established no material and substantial factual issue that the filing of workers' compensation claim was a "significant factor" in his termination. *Goins v. Ford Motor Co.*, 131 Mich.App. 185, 347 N.W.2d 184 (1983). Summary judgment was appropriate in respect to this issue.

 Plaintiff's claim of failure to promote in retaliation for filing workers' com-

pensation claims is subject to a different analysis. He claims this arose because of filing a workers' compensation claim in 1965.[3] The district court held that the promotion claim was time-barred. The applicable Michigan statute of limitations is three years. Mich.Stat.Ann. § 27A.5805(8) (Callaghan Supp.1984). This statute has been applied to wrongful discharge claims, *Cobb v. Mid-Continent Tel. Service Corp.*, 90 Mich.App. 349, 282 N.W.2d 317 (1979), and would appear to apply equally as well to a claim for lack of promotion. Thus, the statute began to run at least, if not in 1965, when plaintiff learned, or as a reasonable employee should have appreciated, that he was being retaliated against. As the district court found, Taylor knew as long ago as July 1971 that he was not being promoted. Long before, Taylor thought he was not being promoted because of his workers' compensation claim. He was aware, in any event, long before 1980 of any purported failure to promote, but pursued no claim.

The "continuing nature" of the wrong, as urged by plaintiff, does not mandate a contrary result. "The proper focus is upon the time of the *discriminatory acts*, not upon the time at which the *consequences* of the acts became most painful." *Delaware State College v. Ricks*, 449 U.S. 250, 258, 101 S.Ct. 498, 504, 66 L.Ed.2d 431 (1980) (emphasis in original). We believe Michigan courts would apply a similar rationale in this kind of case. *Robson v. General Motors Corp.*, 137 Mich.App. 650, 357 N.W.2d 919 (1984), *rev'd on other grounds Sumner v. Goodyear Tire & Rubber Co.*, 427 Mich. 505, 398 N.W.2d 368 (1986); *see also Sanders v. Duke University*, 538 F.Supp. 1143 (M.D.N.C.1982). We find no error in the grant of summary judgment on the retaliation claim with respect to failure to promote.

### III. IMPLIED CONTRACT CLAIM

Plaintiff claims that he has a valid claim under the rationale of *Toussaint v. Blue Cross & Blue Shield of Michigan*, 408 Mich. 579, 292 N.W.2d 880 (1980), because

---

**3.** The filing of the claim in 1980 could have had no effect on the decision not to promote be-

cause plaintiff was at that time on leave and shortly thereafter was terminated.

he was given an employee handbook assuring him of promotion from within and of an open door policy. In *Toussaint* the Michigan Supreme Court found a cause of action to exist when an otherwise terminable-at-will employee relied on the representations made to him in an employee handbook that an employee would not be discharged as long as he did his job. From this representation, the court held that

1) a provision of an employment contract providing that an employee shall not be discharged except for cause is legally enforceable although the contract is not for a definite term—the term is "indefinite," and

2) such a provision may become part of the contract either by express agreement, oral or written, or as a result of an employee's legitimate expectations grounded in an employer's policy statements.

292 N.W.2d at 885.

■ Plaintiff's employment in this case was terminable at will under the language of his original contract and by virtue of supplemental contracts to this same effect. The contracts were not subject to oral modification. Under these employment agreements, plaintiff had no legitimate expectation to a just cause determination prior to his termination. In *Hollowell v. Career Decisions, Inc.*, 100 Mich.App. 561, 298 N.W.2d 915 (1980), the Michigan Court of Appeals found that even in light of *Toussaint*, the general rule in Michigan is that absent an agreement otherwise, the employee for an indefinite term is terminable at will. In that case the court found no cause of action because no allegation was made that the employer had represented that the employee would only be discharged for cause. Similarly, in *Schwartz v. Michigan Sugar Co.*, 106 Mich.App. 471, 308 N.W.2d 459 (1981), the court seemed to require a "common understanding or mutual intent" between the employer and employee before finding a cause of action to exist. Simple "subjective expectancy on the part of an employee will not create such a legitimate claim." 308 N.W.2d at 462 (citations omitted). Not only at the time of his initial employment, but also at other times during his employment, Taylor acknowledged in writing that his employment was "from month to month only," and that there could be no modification of this policy except in writing.

In *Reid v. Sears, Roebuck and Co.*, 790 F.2d 453 (6th Cir.1986), we considered the effect of this kind of written employment agreement executed by the employee at the time of initial application for employment. The language in question established an at-will relationship and provided further that such agreement could not be modified except by a specific written instrument. Under Michigan law, *Toussaint v. Blue Cross & Blue Shield*, 408 Mich. 579, 292 N.W.2d 880 (1980), employers are free to enter into employment contracts terminable at will without assigning cause. *See also Valentine v. General American Credit, Inc.*, 420 Mich. 256, 362 N.W.2d 628 (1984).

In *Dell v. Montgomery Ward*, 811 F.2d 970 (6th Cir.1987), moreover, we upheld summary judgment for the employer and confirmed that written at-will employment agreements continue to be lawful in Michigan:

While the litany of cases from this court rejecting *Toussaint* claims is lengthening with the passing of every term, the manifest correctness of the trial court's decision in this case needs no embellishment with citation to further authority. The unequivocal language in the "sign-off sheet" in this case, which stated that the employees could be discharged "with or without cause and without any previous notice," means what it says and is binding upon the parties. Similarly, the plain and simple statement in the PDRG, that the due process procedures established there did "not form an employment contract," likewise means what it says.

811 F.2d at 974.

In *Ford v. Blue Cross & Blue Shield of Michigan*, 150 Mich.App. 462, 389 N.W.2d 114 (1986), presenting an employment relationship almost identical to this case, the Michigan Court of Appeals recognized that under *Toussaint, supra*, "[e]mployers are most assuredly free to enter into employ-

ment contracts terminable at will without assigning cause." 389 N.W.2d at 115. *See also Eliel v. Sears, Roebuck & Co.*, 150 Mich.App. 137, 387 N.W.2d 842 (1985) (court rejected plaintiff's claims of breach of implied contract when he signed an agreement providing for an "at-will" relationship). *See also Haas v. Montgomery Ward*, 812 F.2d 1015, 1016 (6th Cir.1987) (court affirmed district court's dismissal of claims of wrongful discharge where employment is on an "at-will" basis) (citing *Kay v. United Technologies Corp.*, 757 F.2d 100 (6th Cir.1985)).

Since the relationship established between Taylor and General Motors is clearly terminable "at will," the district court correctly granted summary judgment on this issue. The "open door" policy relied upon by plaintiff did not override this unequivocal at will arrangement, and, indeed, this policy was followed in this case. Indeed, plaintiff frequently used this policy, sometimes to his direct benefit. This policy, in any event, gave Taylor no right to a just cause determination before termination.

We conclude that for the reasons stated, as well as the rationale of the district court, the decision granting judgment to both defendants must be AFFIRMED.