June KUNZ, Plaintiff–Appellant,

v.

UNITED FOOD & COMMERCIAL WORKERS, LOCAL 876, Defendant–Appellee.

No. 92–1919.

United States Court of Appeals, Sixth Circuit.

Submitted June 25, 1993.

Decided Sept. 29, 1993.

Ellis Boal (briefed), Detroit, MI, for plaintiff-appellant.

John R. Runyan (briefed), Sachs, Nunn, Kates, Kadushin, O'Hare, Helveston & Waldman, Detroit, MI, for defendant-appellee.

Before: MILBURN and BOGGS, Circuit Judges, and KRUPANSKY, Senior Circuit Judge.

KRUPANSKY, Senior Circuit Judge.

Plaintiff–Appellant, June Kunz, has appealed the district court's grant of summary judgment in favor of defendant-appellee, United Food & Commercial Workers, Local 876 (Local 876) on her causes of action in breach of contract, breach of the duty of fair representation, and retaliatory discharge. This complaint was initially filed in Michigan state court, but was removed to federal dis-

trict court after it was determined that at least one of plaintiff's causes of action arose under federal law. Upon review of the record before it, the district court granted the defendant's motion for summary judgment and the plaintiff appealed.

Kunz began working for Local 876 as a housekeeper on June 15, 1985. During her initial employment interview, the union's representative allegedly told Kunz "[t]hat you joined the union. You are backed by the Union. . . . That you had the job for as long as you wanted it." *J.App.* at 93. Kunz further testified in her deposition that it was her understanding that "[u]nless you did something horrendously wrong, outrageously, morally, ethically wrong, you had the job. And if you did do something very badly, you had your union representative there to help you out." *Id.* At the time of her job interview, she had also been informed that union membership was a condition of employment. Hence, on her first day of work, Kunz effected a standard form acknowledging union membership with a dues check-off authorization and an exclusive bargaining agent designation. The President of Local 876, Ron Brown, described the form signed by Kunz as one that was required to be executed by unionized employees of employers other than the union who were represented by Local 876 pursuant to a collective bargaining agreement. The form was not designed nor intended to designate the union as the collective bargaining agent for its own employees because of the obvious legal conflicts that would arise from such an arrangement.

In May 1990, Kunz experienced a work-related injury to her hand. She was immediately placed on medical leave and began receiving worker's compensation payments in early July. On October 8, 1990, she returned to work without restrictions. During her absence, the union officials had decided to terminate her employment because of her deficient work performance. Her supervisor, Barbara Woods, stated in her deposition that she had discussed Kunz's poor job performance with her on several occasions. *J.App.* at 40–41. Woods also noted that the Secretary–Treasurer of Local 876, Edward Lively, had commented about plaintiff's sub-stan-

dard job performance. The union asserted that Kunz interfered with and distracted other employees from performing their assignments, watched television in the employee's lounge during working hours, failed to wear her beeper and was generally inefficient in performing her duties. Kunz was informed of her termination immediately after she returned from her medical leave.

After her termination, Kunz attempted to file two grievances with Local 876, protesting her discharge. She was advised that the union had no grievance procedures that were available to its own employees because they were not members of a collective bargaining unit created by a collective bargaining agreement. Accordingly, she appealed her termination directly to the union's executive board which, after reviewing her charges and the Local's disposition, affirmed Local 876's decision to terminate her employment. Kunz subsequently filed this action alleging breach of contract, breach of the duty of fair representation and retaliatory discharge.

After entertaining oral argument on a motion for summary judgment by Local 876, the district court ordered supplemental briefs addressing two questions: (1) whether Kunz could assert a fair representation claim in the absence of a collective bargaining agreement; and (2) whether the National Labor Relations Board (the Board) had exclusive or concurrent jurisdiction over any unfair labor practice claim that may have resulted from the union's alleged misconduct. Summary judgment was granted in favor of Local 876. The district court concluded that although a collective bargaining agreement was not a prerequisite for a fair representation claim, Kunz nevertheless had failed to state such a claim because defendant was not her exclusive bargaining agent. The court also decided that any asserted unfair labor practice that may have been anchored in the union's alleged misrepresentations and that Kunz could have incorporated into her complaint would have been within the exclusive jurisdiction of the Board.

Kunz timely appealed the district court's order of summary judgment. Appeals from grants of summary judgment are reviewed under a *de novo* standard. *EEOC*

*v. University of Detroit,* 904 F.2d 331, 334 (6th Cir.1990). The court must determine whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Massey v. Exxon Corp.,* 942 F.2d 340, 342 (6th Cir. 1991). The evidence must be viewed in a light most favorable to the nonmoving party, but the "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). There must be a genuine issue of material fact. *Middleton v. Reynolds Metals,* 963 F.2d 881, 882 (6th Cir. 1992). A fact is material if it will "affect the outcome of the suit under the governing law.... Factual disputes that are irrelevant or unnecessary will not be counted." *Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. at 2510. Thus, "a party may move for summary judgment asserting that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion. If, after sufficient time for discovery, the opposing party is unable to demonstrate that he or she can do so under the *Liberty Lobby* criteria, summary judgment is appropriate." *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1478 (6th Cir.1989) (adopting the "New Era" of summary judgment as defined by *Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202; *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); and *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

█ As her first assignment of error, plaintiff contended that the district court erred in granting summary judgment to Local 876 on her hybrid § 301 violation.[1] In order to prove a hybrid § 301 claim, the employee must demonstrate that the union breached its duty of fair representation and that the employer breached the collective bargaining agreement. *Sparks v. International Union, United Automobile, UAW,* 980 F.2d 394 (6th Cir.1992). In the instant case, plaintiff advanced the novel theory that as a result of her discharge without just cause, Local 876 breached both its duty of fair representation as a union and its contractual obligations as an employer. Plaintiff's action is misconceived because a hybrid § 301 claim contemplates an adversarial relationship between the union and the employer that did not and could not have existed in the instant case. Local 876 had no duty to represent Kunz against her employer because Local 876 itself was her employer. Moreover, even if plaintiff could have successfully proved a breach of the duty of fair representation, she could not identify any collective bargaining agreement that had been breached by her termination because no such agreement existed. *McTighe v. Mechanics Educational Soc., Local 19,* 772 F.2d 210 (6th Cir.1985) (Discharged supervisor cannot claim jurisdiction under § 301 where he was not part of a collective bargaining unit and was therefore not covered by any bargaining agreement). Plaintiff's allegation of an employment contract providing for just cause termination does not constitute a collective bargaining agreement. § 301 clearly provides jurisdiction for "[s]uits for violation of contracts between an employer and a labor organization ... or between any such labor organizations...." 29 U.S.C. § 185. An employment contract between an individual and a labor organization does not fall within the jurisdiction of § 301. *Wooddell v. International Brotherhood of Electrical Workers, Local 71,* —— U.S. ——, 112 S.Ct. 494, 116 L.Ed.2d 419 (1991) ("[A] suit properly brought under § 301 must be a suit either for violation of a contract between an employer and a labor organization ... or for a violation of a contract between such labor organizations"). *See also Smith v. Evening News Assn.,* 371 U.S. 195, 83 S.Ct. 267, 9

---

1. Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 provides that

Suits for violation of contracts between an employer and a labor organization, representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

L.Ed.2d 246 (1962). Accordingly, because plaintiff was not a party to a collective bargaining agreement, the summary judgment in favor of defendant on her hybrid § 301 claim was proper.[2]

■ In *Storey v. Local 327, International Brotherhood of Teamsters,* 759 F.2d 517 (6th Cir.1985), this circuit recognized, however, that in the absence of a collective bargaining agreement which would give rise to an action under § 301, federal courts have jurisdiction over actions for breach of the duty of fair representation arising pursuant to 28 U.S.C. § 1337.[3] The union's duty of fair representation "arises out of the exclusive power granted unions by section 9(a) of the Labor Act." *Storey,* 759 F.2d at 518. Section 9(a) of the National Labor Relations Act (NLRA), 29 U.S.C. § 159(a), provides that

> [r]epresentatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment....

Plaintiff acknowledged that she had no statutory right to fair representation by the union under § 9(a) of the NLRA because she was not a member of a collective bargaining unit. *McTighe, supra.* She contends, however, that the union owes her a duty of fair representation because it assumed that duty as a result of its written and oral representations; namely, the oral promises allegedly made to her during her initial job interview, the authorization card she signed to join the union, and various union publications promising job security and other benefits to union members. This argument is also misconceived in that the duty of fair representation created by § 9(a), like the duty involved in hybrid § 301(a) actions, necessarily requires some degree of adversarial relationship between the union representing the individual and the individual's employer. Local 876 could not have possibly assumed the duty to represent Kunz because it would have been obligated to represent plaintiff against itself.[4]

Despite plaintiff's arguments concerning the duty of fair representation, the ultimate thrust of the instant action was not to procure union representation, but to obtain the just cause protection enjoyed by union members who belonged to collective bargaining units. In effect, plaintiff argued that although the oral employment contract between her and Local 876 did not include a clause requiring just cause for termination, her employer's oral representations, policy statements and other writings had created such a requirement. Hence, Kunz argued that the union breached its contract by terminating her without just cause. A breach of employment contract claim must be decided under the appropriate state law.

---

**2.** Plaintiff also alleged a collateral § 301 claim arguing that the constitution and the by-laws of the union created a just cause standard for termination that the union had breached. Actions based on a union's constitutions or by-laws were found to be cognizable under § 301 in *Plumbers and Pipefitters v. Plumbers and Pipefitters, Local 334,* 452 U.S. 615, 101 S.Ct. 2546, 69 L.Ed.2d 280 (1981). *See also Wooddell, supra.* This argument is without merit because plaintiff has failed to identify any specific sections in the constitution or by-laws of the union that explicitly provide for just cause termination.

**3.** 28 U.S.C. § 1337 provides, in relevant part, that

> The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies....

28 U.S.C. § 1337(a).

**4.** Plaintiff's more appropriate avenue of redress would have been to charge the union with an unfair labor practice for requiring her to sign a form which misrepresented that the union was both plaintiff's employer and her exclusive collective bargaining representative. *See Teamsters Local 688,* 215 N.L.R.B. 852, 1974 WL 11294 (1974) (union committed unfair labor practice when it recognized itself as the exclusive bargaining representative for its office clerical employees); *Retail Clerks, Local 428,* 163 N.L.R.B. 431, 433 (1967) (union committed unfair labor practice when it required employees to join the union without "affirmatively advis[ing] its employees of their right to engage in concerted activities unaffected by these membership requirements").

In Michigan, employment contracts for indefinite periods are presumed to be terminable at the will of either party. *Lynas v. Maxwell Farms,* 279 Mich. 684, 687, 273 N.W. 315, 316 (1937). In *Toussaint v. Blue Cross & Blue Shield,* 408 Mich. 579, 292 N.W.2d 880 (1980), however, the Michigan Supreme Court concluded that an employment contract for indefinite periods of time could be converted into a contract requiring just cause termination by express agreement or through policy statements promulgated by the employer. The standard for determining this transformation was defined by the Michigan Supreme Court in *Rowe v. Montgomery Ward & Co.,* 437 Mich. 627, 473 N.W.2d 268 (1991). *Rowe* recognized that "contracts for permanent employment ... for an indefinite period of time ... are presumptively construed to provide employment at will" and that the presumption may only be overcome "by proof of an express contract for a definite term or a provision forbidding discharge in the absence of just cause, or it may be overcome by proofs which permit a promise implied in fact of employment security...." *Rowe,* 437 Mich. at 636–37, 473 N.W.2d at 271. Kunz has anchored her cause of action on a vague oral representation made to her by a union personnel officer during her initial interview, supplemented by various general declarations made in Local 876 publications.

"In deciding whether there was mutual assent to a just-cause provision, [the *Rowe* court applied] an objective test, 'looking to the expressed words of the parties and their visible acts.' " *Rowe,* 437 Mich. at 639–40, 473 N.W.2d at 273 (emphasis omitted) (quoting *Goldman v. Century Ins. Co.,* 354 Mich. 528, 535, 93 N.W.2d 240 (1958)).

> Among the circumstances identified as objective indications of intent are the clarity, specificity, and lack of ambiguity of oral statements; whether there were specific negotiations for job security; the nature of the position; and whether, if policy statements are relied on, they support or undercut a reasonable belief that a promise of job security was being extended.

*Rowe,* 437 Mich. at 664 n. 4, 473 N.W.2d at 283 n. 4 (Boyle, J., concurring). Applying these factors to the instant case, it is apparent that Local 876 did not intend to assent to a just-cause provision. The oral statements made to Kunz were neither clear nor specific enough to implicate an intent to displace the at-will presumption. The union representations were more in accord with expressions of " 'an optimistic hope of a long relationship' " than any enforceable promise of a just cause standard for termination. *Rowe,* 437 Mich. at 640, 473 N.W.2d at 273 (quoting *Carpenter v. American Excelsior Co.,* 650 F.Supp. 933, 936 n. 6 (E.D.Mich.1987)). Moreover, the alleged promise was not made in the context of specific contractual negotiation over a just cause provision, but was merely the subject of casual comment during the course of an interview. The other factors relied upon by Kunz, namely the statements in the union publications and the language in the union membership application form, are similarly insufficient to reflect the union's intent to convert her at-will employment contract into one providing for just cause termination.

Indeed, the circumstances of the instant case are analogous to the factual situation in *Rowe.* After being terminated from her employment as a sales person in a department store, the plaintiff in *Rowe* challenged her dismissal alleging that an oral promise of job security had been made to her during her employment interview. The court rejected plaintiff's challenge and distinguished it from *Toussaint* by observing that in *Toussaint* the plaintiffs had each applied for a singular and unique executive position and had engaged in contractual negotiations for job security. The plaintiff in *Rowe,* however, was one of many sales persons employed by a large department store, all of whom performed essentially identical duties. Hence, the court concluded that it was unlikely that the employer would specifically negotiate personalized terms and conditions of employment for each member of its extensive sales force. Likewise, Kunz's position as a housekeeper was similar to a class of other employees who performed similar housekeeping duties and distinguishable from the individualized positions at issue in *Toussaint.* Because plaintiff has not provided any legally sufficient evidence to rebut the presumption of an employment at will, the district court's grant of

summary judgment on her state breach of contract claim was proper.

 As her final assignment of error, plaintiff argued that the district court's order of summary judgment in favor of defendant on her retaliatory discharge claim was improper. Specifically, she asserted that she was terminated in retaliation for filing a worker's compensation claim. To support a charge of retaliatory discharge, plaintiff must prove that her application for worker's compensation benefits was a significant factor in her discharge. *Goins v. Ford Motor Co.*, 131 Mich.App. 185, 347 N.W.2d 184, 191 (1983). In *Taylor v. General Motors Corp.*, 826 F.2d 452 (6th Cir.1987), this court defined the applicable burden of proof necessary to determine if the filing of a worker's compensation claim was a significant factor in an employee's subsequent discharge. In *Taylor,* the court adopted the shifting burden analysis articulated by the Supreme Court in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Under the *Burdine* analysis, the plaintiff initially has the responsibility to come forth with specific evidence that the filing of a claim was a significant factor in her termination. *Taylor,* 826 F.2d at 456. In her brief on appeal, Kunz argued that she satisfied her initial burden of proving a prima facie case by negative inference, i.e., she was a member of a protected class (filers of worker's compensation claims), she was qualified, she was terminated, and the position remained open or was filled by someone not in the protected class. Appellant's Brief at 29–30. However, in her deposition, Kunz testified that she attributed her discharge to the filing of her worker's compensation claim because she was terminated the day after she returned from her medical leave. She also stated that she had believed that when an employee came "off a workmens comp, you had to work at least thirty days then they could fire you." *J.App.* at 166–67. Her reasons are legally insufficient to prove that the filing of a worker's compensation claim was a significant factor in her discharge. Hence, summary judgment on the retaliatory discharge claim was proper.

For the reasons stated, the district court's grant of summary judgment is hereby **AFFIRMED.**