Charles LEMON, Plaintiffs,

v.

BWX TECHNOLOGIES, INC.,
et al., Defendants.

No. 5:04 CV 2385.

United States District Court,
N.D. Ohio,
Eastern Division.

May 20, 2005.

Christina M. Royer, John Alan Tucker, Akron, OH, for Plaintiffs.

Thomas R. Crookes, Vorys, Sater, Seymour & Pease; Akron, OH, for Defendants.

## ORDER

ADAMS, District Judge.

### I. Introduction

The plaintiffs, a class of retirees, brought this action under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* (ERISA) and the Labor Management Relations Act of 1947, 29 U.S.C. §§ 185–187 (LMRA). They challenge the defendants' decision to increase their out-of-pocket healthcare costs, while not increasing the active employees'

healthcare costs. The defendants have filed a motion to dismiss, which presents the Court with the following issues: (1) whether the defendants were acting in a fiduciary capacity under ERISA; and (2) whether the plaintiffs have stated a cause of action under Section 301 of the LMRA. The parties have extensively briefed the matter. And, for the reasons that follow, the Court grants the defendants' motion in part and denies it in part.

## II. Factual Background

### A. The parties

The plaintiffs are Charles Lemon, Donald Nichols, Mary Watts, Jess Marcum, Richard Ambrosic, Gus Chamas, and Edward Myers ("the Retirees").[1] They are retired hourly employees of defendant BWX Technologies, Inc. ("BWX"), a nuclear equipment operations plant, who retired during the period of time from January 1, 1989 through November 1, 2000. They are all aged sixty-five or under and are receiving monthly payments from a vested pension plan. They are also participants in a welfare benefits plan that BWX maintains. This plan provides the health insurance benefits that are central to this dispute.

Defendants are (1) BWX, (2) BWX Medical & Life Insurance Plan for Hourly Paid Employees BWX Technologies, Inc., Nuclear Equipment Division ("the Plan"), and (3) BWX Technologies, Inc. Plan Committee ("the Committee"). The Plan is self-insured, and the Committee is made up of certain individuals that BWX currently employs.

### B. The Collective Bargaining Agreements

BWX has always been a party to collective bargaining agreements with The International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers, AFL–CIO and its Local 900. And, there has always been a collective bargaining agreement in place that governs the healthcare benefits to which both the Retirees and the active employees ("the Actives") are entitled. Two collective bargaining agreements are central to this dispute.

The first collective bargaining agreement ( "the 1999 CBA") was in effect from May 1999 to April 2004. Section 22.01 of this agreement governed the rights to health insurance benefits for the Actives. This section, *inter alia*, provides that BWX will pay certain costs and that "[a]ny costs in excess ... will be paid by the employee." (1999 CBA at § 22.01(b),(c)). Appendix F of the 1999 CBA governed health insurance benefits for the Retirees. Appendix F provides, *inter alia*, that the Retirees may receive healthcare coverage, but that they "will be responsible for paying the cost of [the] coverage and any future increases.…" (1999 CBA at Appendix F, ¶ 1). The Retirees are also required to pay "any future cost increases above the amounts specified …." (*Id.* at ¶ 9). According to the Retirees, BWX decided to "pool" both the Actives and the Retirees for purposes of providing healthcare benefits, despite the fact that their rights were set forth in separate sections of the agreement.

In early 2004, BWX and the Union began negotiations for a new collective bargaining agreement to cover the time period from May 2004 through April 2008 ("the 2004 CBA"). According to the Retirees, they did not participate in the negotiations and they were not represented by

---

1. The Retirees purport to represent a class of similarly situated retirees. Pursuant to the parties' request, the Court issued an Order granting the Retirees thirty days, from the date of the Court's ruling on the defendants' dispositive motion, to file their motion for class certification.

the union. Despite this, the provision of the 2004 CBA remained, in essence, unchanged from the 1999 CBA. In other words, both collective bargaining agreements required the Actives and the Retirees to bear any costs that exceeded the capped amounts.

## C. The Memorandum of Understanding

During the negotiations for the 2004 CBA, but prior to the time it went into effect, BWX and the Union entered into a "Memorandum of Understanding," which established that the Actives would not be required to bear any increased costs for a period of four years. The memorandum was later incorporated into the 2004 CBA. The Plan, however, was never formally amended. According to the Retirees, the purpose of the Memorandum of Understanding was to require the Retirees to bear the brunt of increases in the cost of providing healthcare benefits to what they deem the "pooled group."

## D. The Plan

The Plan, among other things, deals such things as funding and administration. It contemplates that "[c]ontributions necessary to fund benefits under the Plan shall come first from amounts contributed by Plan participants and then from the general assets of the Company." (Medical and Life Insurance Plan "Plan. Doc." at Art. 2, § 2.2). The Plan administrator is required to "administer the Plan in a uniform non-discriminatory manner with regard to all similarly situated Plan participants and their eligible family members." (Id. at Art. 3, § 3.2). The Committee has the sole discretionary authority to interpret healthcare benefits provisions and decide all questions concerning the rights of Plan participants with regard to healthcare benefits. (Id.). The Plan gives BWX—subject to the collective bargaining agreement—the right to modify or amend any of the Plan's provisions, as long as the modifi-

cation or amendment does not "make it possible for any benefit to be used for, or diverted to, purposes other than for the exclusive benefit of participants under the Plan." (Id. at Art. 4, § 4.1). The Plan requires that any action BWX takes be made by resolution of its board of directors, or by a written instrument executed by persons the board has empowered to make such decisions. (Id. at Art. 5, § 5.1).

## III. Procedural History

In May 2004, BWX informed the Retirees that their healthcare costs would be increased. Later that same year, the Retirees filed this action alleging that the defendants breached their fiduciary duty under ERISA and that BWX breached the collective bargaining agreement.

Shortly after the case was filed, the defendants filed a motion to dismiss on the grounds that they were not acting as fiduciaries under ERISA and that the collective bargaining agreement was not breached because it contemplated BWX's actions.

The parties agreed that it would be prudent for the Retirees to wait on filing their motion for class certification until after the Court's ruling on the dispositive motion. The Retirees, however, filed a motion requesting leave to file an amended complaint. Leave was granted, and the defendants were given time to supplement their motion to dismiss in light of the new allegations. Shortly thereafter, the Retirees supplemented their opposition.

## IV. Standard of Review

In determining whether these claims must be dismissed under Rule 12(b)(6), the Court must construe the amended complaint in a light most favorable to the Retirees, accept all of the factual allegations as true, and determine whether the Retirees can undoubtedly prove no set of facts in support of their claims that would entitle them to relief. *Columbia Natural*

*Resources, Inc. v. Tatum,* 58 F.3d 1101, 1109 (6th Cir.1995) (citing *Allard v. Weitzman,* 991 F.2d 1236, 1239–40 (6th Cir. 1993)). If an allegation is capable of more than one inference, the Court must construe it in the Retirees' favor. *Id.* The Court may not grant the defendants' Rule 12(b)(6) motion merely because it may not believe the Retirees' factual allegations. *Id.*

Although this is a liberal standard of review, the Retirees still must do more than merely assert bare legal conclusions. *Id.* To survive the defendants' Rule 12(b)(6) motion to dismiss, the Retirees' amended complaint must allege either "direct or inferential" allegations regarding all of the material elements necessary to sustain recovery under "some" viable legal theory. *Id.* Dismissal is proper when relief cannot be granted under any set of facts proved consistent with the allegations. *Trzebuckowski v. City of Cleveland,* 319 F.3d 853, 855 (6th Cir.2003) (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)).

## V. Discussion

### A. ERISA claim

■ At issue on the defendants' motion is whether BWX was acting as a fiduciary when it decided to increase the Retirees' healthcare costs and, thus, is subject to review for compliance with ERISA's fiduciary duties. The parties, at this point, do not dispute the facts on which the Retirees base their claim. They also do not dispute the governing law. Rather, they dispute whether BWX was acting in a fiduciary capacity when it decided to increase healthcare costs for the Retirees while choosing not to do the same for the Actives.

An employer acts as a fiduciary under ERISA when it (1) exercises discretionary authority or control respecting the management of a plan, (2) exercises any authority or control respecting management or disposition of plan assets, or (3) exercises discretionary authority or responsibility in the administration of a plan. 29 U.S.C. § 1002(21)(A). Because BWX wears "two hats" as both the employer and the plan administrator, *Akers v. Palmer,* 71 F.3d 226, 231 (6th Cir.1995), its actions relating to the Plan can either be classified as fiduciary actions, which are governed by ERISA, or employer actions, which are not. *Sengpiel v. B.F. Goodrich Co.,* 156 F.3d 660, 665 (6th Cir.1998).

Here, the Retirees contend that BWX was administering the Plan when it made the decision to charge the Retirees with the excess healthcare costs. BWX, on the other hand, argues that its actions were more akin to a plan amendment, which is not a fiduciary action. *See e.g. Adams v. Avondale,* 905 F.2d 943, 947 (6th Cir.1990). The Court, therefore, is called upon to decide whether BWX's actions are deemed fiduciary actions, or whether they were merely business decisions that ERISA does not govern.

Construing the Amended Complaint in a light most favorable to the Retirees and accepting all of their factual allegations as true, it does not appear that the Retirees undoubtedly can prove no set of facts in support of this claim that would entitle them to relief. Without the benefit of an evidentiary record, the Court is not prepared to rule that BWX's actions amounted to no more than a mere modification or amendment of the Plan. BWX does offer an abundance of case law to support its position. Almost all of the cases cited, however, were decided by courts that had the benefit of some type of record when finding that the employer's actions with respect to an ERISA plan were not fiduciary. Accordingly, and without the benefit of an evidentiary record, the Court cannot decide this issue. Therefore, in applying the Rule 12(b)(6) standard of re-

view, the Court must deny the defendants' motion because it cannot determine, based solely on the pleadings, that the defendants were not acting in a fiduciary capacity.

### B. Section 301 claim

In arguing for dismissal of the Retirees' Section 301 claim, BWX states that dismissal is warranted because it did not breach the collective bargaining agreement. The Retirees, in turn, argue that as third-party beneficiaries to the agreement they having standing to assert a claim for breach of the collective bargaining agreement because BWX breached the implied duty of good faith and fair dealing. The Court, having reviewed the arguments presented by each party, finds that dismissal of this claim is appropriate, but for reasons other than those advanced by the parties.

It is well-established that a hybrid Section 301 suit implicates the interrelationship among a union member, his union, and his employer. *Vencl v. International Union of Operating Engineers, Local 18,* 137 F.3d 420, 424 (6th Cir.1998). "In order to prove a hybrid § 301 claim, the employee must demonstrate that the union breached its duty of fair representation *and* that the employer breached the collective bargaining agreement." *Kunz v. United Food & Commercial Workers, Local 876,* 5 F.3d 1006, 1009 (6th Cir.1993) (emphasis added).

Here, the Amended Complaint states that the "Retirees did not participate in the negotiations and were not represented by the collective bargaining unit that represented the Actives." (Am. Compl. at ¶ 12). Taking this fact as true, there can be no breach of the duty of fair representation. Despite that the Retirees chose only to sue BWX and not the union, the case they must prove is the same whether they named BWX, the union, or both.

*DelCostello v. International Brotherhood of Teamsters,* 462 U.S. 151, 165, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). Because the union did not represent the Retirees, they cannot maintain an action under Section 301, and their claim must be dismissed. Because this claim fails as a matter of law, the Court need not reach the issue of whether BWX breached the collective bargaining agreement.

### VI. Conclusion

Defendants' motion is granted in part and denied in part. It is granted as to the Retirees' Section 301 claim, but denied as to their ERISA claim. The case will be allowed to proceed, and discovery taken, on a limited basis that the Court will decide at the **status conference** scheduled for **June 20, 2005 at 10:00 a.m.** The Court will not entertain a motion for class certification until further notification.

IT IS SO ORDERED.