35 F.3d 566
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Randy Thomas STRADLEY, Plaintiff-Appellant,
v.
John NICHOLS; Oakland County; Robert Smith; Maurice
Sutton; Gerald Reeves; Len Schubring; and
Edward Pirozek, Defendants-Appellees.
 No. 93-1422.
 United States Court of Appeals, Sixth Circuit.
 Aug. 31, 1994.
 
 Before: GUY and BOGGS, Circuit Judges; and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Randy Thomas Stradley appeals from orders granting summary judgment to the defendants in his Sec. 1983 suit and denying him leave to amend his complaint to add another defendant. The defendants are Oakland County, Michigan; Sheriff John Nichols; Oakland County Jail officers Robert Smith, Maurice Sutton, Gerald Reeves, and Edward Pirozek; and Len Schubring, a medical staff assistant at the Oakland County Jail. Stradley alleged in his complaint that his rights were violated when the defendants did not give him classification interviews prior to changing his security classification, that his rights were violated when he was placed in the infirmary with a patient suffering from tuberculosis, and that he received inadequate medical care while in jail. Because the evidence in the record does not raise an issue as to Stradley's claims, we affirm the judgment of the district court.
 
 
 2
 * Prior to being held at the Oakland County Jail, Stradley was in state prison at Camp Waterloo, a minimum security institution. In February and April 1987, he was transferred from Camp Waterloo to Oakland County Jail in order to testify for the state in an unrelated criminal action against Sgt. Ken Gay of the Oakland County Sheriff's Department. Stradley was put in protective segregation in a medical cell for his entire stays (11 days in February, 3 days in April). The segregation was for Stradley's own protection, because, as a "snitch," he was in danger from the other inmates.
 
 
 3
 Stradley alleged in his complaint that his rights were violated when he was put in the higher security classification of protective segregation without a required classification interview. He also claimed that he was placed in the infirmary with a patient with tuberculosis. Stradley further claimed that Pirozek informed other prisoners that he was a snitch (and thus encouraged them to assault him), that he complained to Sutton and Pirozek about the cramped conditions of his cell, and that his medical complaints were ignored.
 
 
 4
 In August 1987, while on parole, Stradley was arrested for the theft of a lawn mower and put in Oakland County Jail in medium security; on this occasion, he did have an initial classification interview. Stradley alleges that in October 1987 his classification was changed from medium to maximum security without notice or hearing. Stradley claims that in January 1988 he was held in a holding cell, without proper bedding or sanitation, and that his complaints about his confinement level and inadequate allowance of exercise, which he says exacerbated his medical problems, were ignored. On February 9, 1988, he was convicted and sentenced for the lawn mower theft, and on February 12, his security classification was changed from maximum to minimum and he was transferred to state prison.
 
 
 5
 The district court denied the defendants' first motion for summary judgment. The district court found that the Oakland County Jail policies and procedures conferred a liberty interest on Stradley, in that they enumerate limited reasons for imposing segregation and require a classification interview, the duty sergeant's approval of classification decisions, and notice and periodic review for the stricter classifications. The district court also noted that the prison officials still retained some discretion in their decision but that such discretion was limited. The district court denied summary judgment because the record at that point was not sufficiently developed to show whether the procedures had been complied with.
 
 
 6
 On the defendants' second motion for summary judgment, the district court determined that Stradley's due process rights had not been violated. As to the claim of deliberate indifference to Stradley's medical needs, the district court concluded that the records showed that he had been given numerous medical examinations and treatment within a short period. At most, Stradley's claims showed a disagreement as to the amount of exercise he required, which is a medical judgment and not a basis for a finding of deliberate indifference.
 
 
 7
 As to the claim of deliberate indifference to Stradley's health and safety because of his alleged exposure to the patient with TB, the district court concluded that there was no evidence in the record to show that Stradley suffered from any such exposure or has even been exposed to TB. As to the claim that procedures were violated when Stradley was put in segregation upon transfer to the Oakland County Jail in February and April 1987, the district court noted that the state prison minimum security classification (from Camp Waterloo) does not transfer to the county jail, and the Oakland County Jail's policy is to classify state "writ" prisoners (i.e., prisoners transferred to Oakland County Jail by state writ) as maximum security. For state witnesses, the Oakland County Jail rules give officials discretion to place prisoners in protective custody in an infirmary cell. Therefore, Stradley's rights were not violated in those transfers because the procedures--the constitutionality of which Stradley does not contest--were complied with.
 
 
 8
 As to Oakland County and Sheriff Nichols, who was sued in his official capacity, the district court noted that the policy was to classify "writ" prisoners as maximum security, that Stradley did not challenge the constitutionality of that rule, and that the rule was complied with. Thus, there was no basis for municipal liability under Sec. 1983 against the county or the county sheriff.
 
 
 9
 Finally, as to the claim that Stradley's due process rights were violated in the October 1987 change to maximum security (due to an alleged lack of notice, hearing, and compliance with other procedural requirements), the district court concluded that there was no evidence in the record that the individual defendants (Reeves, Sutton, and Pirozek here) had anything to do with Stradley's change. And in the January 1988 lockdown, the district court stated that Stradley in fact had a hearing and was found guilty of a prison rule violation. The record showed that he received an "institutional ticket" and was ordered by a review board into lockdown for five days. During a portion of the time, he was held in the jail gymnasium due to overcrowding of the cells, but he was transferred to a cell when one became available. Therefore, he did receive due process in the January 1988 lockdown.
 
 
 10
 With the parties' stipulation and this court's consent, a number of the claims and issues were dismissed. The counts related to the February and April 1987 transfers of Stradley from Camp Waterloo to Oakland County Jail to testify as a state witness were dismissed. All claims against Oakland County, Sheriff Nichols, Smith (the official who ordered that Stradley be placed in protective custody in Oakland County Jail), and Schubring (the medical assistant who rendered care to Stradley) were dismissed. All claims related to improper or inadequate medical treatment were dismissed. Finally, all issues related to filing amended complaints to add as a defendant Gordon Pizzini (a supervisor of some of the defendants, against whom a separate complaint by Stradley had already been dismissed by the district court on statute of limitations grounds) were dismissed. Thus, the only defendants involved in this appeal are Reeves, Sutton, and Pirozek. The only claims remaining are those related to the October 1987 security classification change and January 1988 confinement, both of which allegedly occurred without notice or hearing.
 
 II
 
 11
 Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552-53 (1986). This court reviews the grant of summary judgment de novo. EEOC v. University of Detroit, 904 F.2d 331, 334 (6th Cir.1990). We view the evidence in the light most favorable to the non-moving party, and we make all reasonable inferences in favor of the non-moving party. Matsushita Elec. Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986); Kunz v. United Food & Commercial Workers, Local 876, 5 F.3d 1006, 1008-09 (6th Cir.1993).
 
 
 12
 Under Sec. 1983, a person who, under color of state law, subjects another person to a deprivation of "any rights, privileges, or immunities secured by the Constitution and laws" of the United States, is liable to the party so injured. 42 U.S.C. Sec. 1983. In order to sustain a claim under Sec. 1983, the plaintiff must show that (1) the defendant(s) acted under color of state law, (2) the conduct caused a deprivation of constitutional rights, and (3) the deprivation occurred without due process of law. Jones v. Sherrill, 827 F.2d 1102, 1104 (6th Cir.1987) (citing Nishiyama v. Dickson County, Tenn., 814 F.2d 277, 279 (6th Cir.1987) (en banc)). Here, Stradley contends that his due process rights were violated in the alleged failure of the defendants to adhere to classification procedures.
 
 
 13
 Generally, a prisoner does not have a constitutional right to enjoy any particular security classification. Montanye v. Haymes, 427 U.S. 236, 242, 96 S.Ct. 2543, 2547 (1976). A state may, however, create a constitutionally-protected liberty interest by promulgating regulations that use mandatory language in connection with specific substantive predicates that limit officials' exercise of discretion. Beard v. Livesay, 798 F.2d 874, 877 (6th Cir.1986) (citing Hewitt v. Helms, 459 U.S. 460, 103 S.Ct. 864, 871 (1983)). However, requiring a certain kind of procedure to be followed is not enough alone to create a liberty interest. Olim v. Wakinekona, 461 U.S. 238, 250, 103 S.Ct. 1741, 1748 (1983). There must be substantive limitations on official discretion with particularized standards that mandate a particular result if the substantive predicates are met. Kentucky Dept. of Corrections v. Thompson, 490 U.S. 454, 463, 109 S.Ct. 1904, 1910 (1989).
 
 
 14
 Here, the district court, in denying the defendants' first motion for summary judgment, determined that the county's procedures in fact created a constitutionally-protected liberty interest in a prisoner's security classification. The district court reasoned that the regulations required classification interviews and limited the imposition of segregation to only certain enumerated reasons (e.g., security risks, state witnesses, dangerous prisoners, violators of major rules, etc.). The district court concluded that these limitations on the discretion of the Oakland County Jail officials were sufficiently restrictive to create a constitutionally-protected liberty interest.
 
 
 15
 We doubt whether the policies and rules in this case are sufficiently binding to create a liberty interest. The Oakland County Jail policies describe the various procedures that are to be followed when prisoners are transferred to the jail. The policies require that the inmates be given various explanations and information at their classification interviews. Further, in making classification and reclassification determinations, officials must consider various factors, such as the prisoners' security requirements, need for services and programs, institutional behavior, disciplinary charges, past record, and "other factors." J.A. at 200-01. Assignment to maximum security is required for prisoners admitted under serious assaultive felony charges, having a history of assaultive felony convictions, or posing a serious risk to the security of the institution, but this list is not declared to be exhaustive. J.A. at 201.
 
 
 16
 These policies and rules do not create a liberty interest in a particular security classification. They do not specify substantive predicates that, if met, would mandate a particular result. In other words, the policies and rules do not establish any criteria that, if satisfied, would require the Oakland County Jail officials to place a prisoner in a particular classification. Absent such substantive limitations, there is no constitutionally-protected liberty interest. Thompson, 490 U.S. at 463, 109 S.Ct. at 1910. Cf. Mackey v. Dyke, --- F.3d ----, ---- (6th Cir.1994) (liberty interest created where prisoner may be segregated only under listed circumstances, after a hearing, and with monthly review).
 
 
 17
 Even assuming that there is a constitutionally-protected liberty interest here,[1] however, there is insufficient evidence in the record to support Stradley's claims that remain on appeal. Those claims are that he was reclassified in October 1987 to maximum security without due process and that he was placed in segregation in January 1988 without due process. The claims remain only against Reeves, Sutton, and Pirozek.
 
 
 18
 The record does not indicate that any of the remaining defendants was responsible for Stradley's transfers into more restrictive confinement. Oakland County Jail records show that, in fact, Stradley's security classification was changed from medium to maximum in October 1987. J.A. at 91. The records, however, which are computer printouts of the jail's prisoner tracking log, fail to indicate the reason for the change or who was responsible for changing his classification. These records also show that on January 19, 1988, Stradley was placed in maximum security in cell block D "for lock-down per the review board." J.A. at 91. On January 23, 1988, he was transferred to the holding tank during the day and to the gymnasium for "overnight sleeping." J.A. at 79. On January 26, 1988, he was transferred to a single cell, with a maximum security classification. J.A. at 91. Also on January 26, Stradley submitted a written grievance to jail officials. In that grievance, he indicates that he had been placed in "lock up" on January 18, 1988, for an "institutional ticket." J.A. at 127. Again, however, other than the reference to the review board, the records are silent as to who transferred Stradley.
 
 
 19
 Nor does the deposition testimony of the defendants, taken in the light most favorable to Stradley, establish who was responsible for Stradley's reclassification. In his deposition, Reeves indicated that he was the "compliance officer" for Oakland County Jail. His duties in that position included "[s]afety and security for both staff and inmate population, over crowding, inmate over crowding and alternative plans, plan of action, training for staff." J.A. at 132. In addition, he "handle[d] all inmate grievances against the system," "wrote and devised policies as well as updated old jail policies and procedures," and served as liaison between the sheriff and the jail's medical services and between the sheriff and the federal courts. J.A. at 133. Reeves had the only key to the "kite box," into which a prisoner with a grievance could put a "kite," or "internal handwritten note" explaining the basis for the grievance. Reeves would investigate or oversee the investigation of the grievance. J.A. at 134-36. Finally, Reeves stated that, as compliance officer, he was not "[r]outinely" involved with determining "what areas of the jail would be appropriate for different security classifications." J.A. at 144. This testimony does not establish that Reeves had anything to do with Stradley's October 1987 reclassification or January 1988 transfers.
 
 
 20
 Reeves also testified that a supervisor is in charge of the civilian classification personnel. J.A. at 147. He noted that only "command level officers" (i.e., lieutenants and captains) could "put an individual in a certain area for certain reasons and be able to back it up," but deputies could not. J.A. at 148. Reeves described the disciplinary procedure as follows: A deputy would notify his supervisor of a disciplinary violation. A report would be made, and the deputy and supervisor would sign it. The report would be submitted to a lieutenant, and a ticket would then be issued. A copy of the ticket would be given to the inmate, supervisor, and hearing officer. J.A. at 149-50. To the extent that Reeves is implicated in Stradley's transfers because of his supervisory status as a lieutenant, Stradley has pointed to no evidence that would support the imposition of Sec. 1983 liability on Reeves on that basis alone. See Hays v. Jefferson County, Ky., 668 F.2d 869, 872-74 (6th Cir.) ("At a minimum a [Sec. 1983] plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."), cert. denied, 459 U.S. 833, 103 S.Ct. 75 (1982); Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir.) (same), cert. denied, 469 U.S. 845, 105 S.Ct. 156 (1984).
 
 
 21
 The deposition testimony of Sutton and Pirozek also does not support a claim that they had any authority to change Stradley's classification or to transfer him. Stradley's deposition testimony is similarly unhelpful in supporting his claims. Stradley testified that he made complaints to Reeves, Sutton, and Pirozek about his medical condition and confinement. J.A. at 52-53. Copies of Stradley's "kites" appear in the record. See, e.g., J.A. at 126-27. Stradley also asserted in an affidavit that "[a]fter five days in solitary confinement [in January 1988], I was transferred, according to Sgt. Pirozek 'at Lt. Reeves' orders,' to a holding cell." J.A. at 69. The officers' receipt of Stradley's complaints does not show that they had authority to reclassify or transfer Stradley, and his claim that Reeves ordered the transfer (which appears to be based on inadmissible hearsay, see Fed.R.Evid. 801(c), 802) is not supported by any other evidence.
 
 
 22
 Finally, the procedures at the Oakland County Jail do not demonstrate any linkage between the defendants and Stradley's reclassification and transfers. The Oakland County "Inmate Guide" states that for a major rule infraction, a prisoner will receive written notification of the violation and a disciplinary hearing, be allowed to call witnesses, and be permitted an appeal. For a minor rule violation, the offense and punishment will be presented to the prisoner in writing. J.A. at 180. The policies and procedures indicate that "[o]nly the Disciplinary Hearing Committee may place a resident in Administrative Segregation" for a major rule infraction. J.A. at 198.
 
 
 23
 The policies and procedures indicate that the civilian classification personnel are supervised by a "classification supervisor," who is a "Deputy II-Corrections Officer ... or another supervisory level officer performing as supervisor." J.A. at 200. The classification supervisor is charged with the responsibility of overseeing the classification and reclassification interviews and is required to "authorize with signature and date all security level/placement decisions." J.A. at 203-05. However, Stradley points to no evidence that shows that either Reeves, Sutton, or Pirozek was the classification supervisor on duty at the time of his October 1987 reclassification or January 1988 transfers.
 
 
 24
 We have carefully scrutinized the references to the record made by Stradley's counsel at oral argument, in addition to the rest of the record. Even viewed favorably to Stradley, the evidence does not support his allegations that Reeves, Sutton, or Pirozek violated his rights. Therefore, even if the Oakland County Jail policies and rules did create a constitutionally-protected liberty interest, summary judgment on Stradley's Sec. 1983 claims was proper.
 
 III
 
 25
 The judgment of the district court is AFFIRMED.
 
 
 
 [1]
 The defendants did not appeal from the district court's finding that there was a liberty interest, but, inasmuch as the district court's determination was a non-final order, it is unlikely that they could appeal from that order. See Moody v. Kapica, 548 F.2d 133 (6th Cir.1976) (per curiam). Further, the defendants prevailed at the summary judgment stage, so they had no incentive to appeal. In their appellate brief, however, the defendants contest the district court's finding that there was a liberty interest